J-S18041-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON F. FORD | : | |
| | : | |
| Appellant | : | No. 1225 MDA 2019 |

Appeal from the Judgment of Sentence Entered March 26, 2019
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0001095-2018

BEFORE: KUNSELMAN, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED MAY 21, 2020**

Appellant Jason F. Ford appeals the judgment of sentence entered by the Court of Common Pleas of Centre County after a jury convicted Appellant of Manufacture, Delivery or Possession of a Controlled Substance with Intent to Manufacture or Deliver, Possession of a Controlled Substance, Criminal Use of a Communication Facility, and Possession of Drug Paraphernalia. Appellant claims the trial court abused its discretion in refusing to give one of his requested jury instructions. After careful review, we affirm.

The following factual background was developed at Appellant's jury trial that was held on November 9, 2018: in June 2018, drug task force officers conducted surveillance of Appellant's residence at 143 Fairlawn Avenue in Houserville, Pennsylvania, after receiving numerous citizen reports of

---

[*] Former Justice specially assigned to the Superior Court.

suspected drug trafficking at this home. The drug task force observed several individuals drive to Appellant's residence, enter for a brief period of time, and leave the residence shortly thereafter. Notes of Testimony (N.T.), 11/9/18, 37-42, 44-45, 48-49.

In particular, the officers observed an individual named Terry Miller making multiple brief stops at Appellant's home. On June 13, 2018, officers watched as a Dodge Dakota driven by Clint Wagner dropped Miller off at Appellant's home. Ten minutes later, Miller exited Appellant's home and was picked up by a white Kia sedan driven by Brian Foster. N.T. at 47, 50-53.

The officers subsequently stopped the Kia sedan and detained Foster and Miller. In a search of the vehicle, officers discovered a pipe containing marijuana residue, a marijuana grinder, a pill grinder, a small amount of marijuana in a pill container, two small bags of crystal methamphetamine,[1] a Buprenophine tablet, and a digital scale. Miller also was found in possession of a small amount of crystal methamphetamine. N.T. at 53-56, 131-32.

At trial, Miller admitted he was addicted to methamphetamine and traveled to Appellant's home several times a day to purchase this drug. Miller recalled that on June 13, 2018, that he attempted to purchase $250 worth of drugs from Appellant. However, as Appellant did not have that quantity of drugs in his possession, Appellant gave Miller one gram of methamphetamine and a Subutex pill, admitted that he still owed Miller $90 worth of drugs, and

---

[1] The two bags contained a total weight of 1.02 grams of methamphetamine. N.T. at 99-101.

- 2 -

promised to call Miller after he received more methamphetamine from his supplier. After this transaction, officers stopped Foster's vehicle (in which Miller was a passenger), and discovered Miller in possession of methamphetamine. N.T. at 187-191.

Miller explained that he had a custom of arranging with other drug users (including Wagner and Foster) to pool their money in order to "all take turns" buying drugs and splitting the drugs amongst themselves. Miller explained that he had a digital scale to make sure that each individual received their proper share of the drugs. Both Wagner and Foster confirmed that they would share drug purchases with Appellant. Wagner indicated that he would drive Appellant around in his vehicle in exchange for Appellant providing him with small amounts of methamphetamine. N.T. at 146, 160-61, 180-83, 191, 217.

In the evening hours of June 13, 2018, drug task force officers stopped a silver Chevy Impala that had departed from Appellant's home. Officers discovered that Tyler Alterio was the driver of the vehicle and Kaitlyn Rearick was the passenger. Alterio was found to be in possession of methamphetamine. N.T. at 125-28, 132-133.

At trial, Rearick claimed that Alterio had given her $120 for her to obtain methamphetamine for him. Rearick indicated that after she heard Appellant sold methamphetamine, she contacted Appellant on Facebook and arranged to meet him. On June 13, 2018, Rearick met with Appellant at his home to buy the drugs, some of which she used intravenously while she was waiting for Alterio to pick her up. After Alterio arrived Rearick up from Appellant's

home, he was pulled over by police shortly thereafter. Rearick asserted that this was the first and only time that she had purchased methamphetamine from Appellant and had never met him before June 13, 2018. N.T. at 125-128, 222, 229.

On June 14, 2018, officers executed a search warrant for Appellant's home. In one of the bedrooms, officers recovered $979 U.S. currency in Appellant's wallet, a pill bottle on Appellant's nightstand containing a powdered substance,[2] Clonazepam pills, two bags of suspected methamphetamine, three syringes, an appointment card for Appellant, and an envelope addressed to Appellant at the 143 Fairlawn Avenue address. Officers also confiscated two digital scales, various items of drug paraphernalia, and multiple BB guns. Detective Donald Paul testified in his experience as a drug investigator, he observed that individuals who are not permitted to possess firearms often buy BB guns, which can look like real firearms. N.T. at 69-74; Inventory of Seized Property, at 1.

Detective Donald Paul also testified that he investigated Appellant's work history using Appellant's Social Security number, which showed that over the previous four years, Appellant had only worked in one quarter in 2017. N.T. at 79.

---

[2] Officer Donald Paul testified that the powder was suspected to be a "cutting agent," a substance that drug dealers mix with their drug to increase the volume of their product and their profit. N.T. at 69-70.

- 4 -

On November 19, 2019, a jury convicted Appellant of the aforementioned offenses. On March 26, 2019, the trial court sentenced Appellant to two consecutive terms of 21 to 60 months' imprisonment for two counts of PWID and one consecutive term of 12 to 60 months' imprisonment for the Criminal Use of a Communication Facility charge. Appellant filed a timely post-sentence motion, which the trial court subsequently denied. Appellant filed this timely appeal and complied with the trial court's direction to file a Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises one issue for our review on appeal:

Did the trial court err in refusing to instruction the jury on [Appellant's] requested point for charge, No. 5, Pennsylvania Suggested Standard Criminal Jury Instruction, 4.06, Certain Testimony Subject to Special Scrutiny, with respect to the testimony of Commonwealth witnesses Tyler Alterio, Brian Foster, Terry Miller, Kaitlyn Rearick, and Clint Wagner?

Appellant's Brief, at 13.

Our standard of review is well-established:

In reviewing a jury charge, we determine "whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case." We must view the charge as a whole; the trial court is free to use its own form of expression in creating the charge. "Our key inquiry is whether the instruction on a particular issue adequately, accurately and clearly presents the law to the jury, and is sufficient to guide the jury in its deliberations." Moreover,

it is well-settled that "the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties, and its refusal to give a requested charge does not require

- 5 -

> reversal unless the appellant was prejudiced by that refusal."
>
> *Commonwealth v. Wise*, 171 A.3d 784, 787-88 (Pa. Super. 2017) (citations and brackets omitted), *appeal denied*, ––– Pa. – –––, 186 A.3d 939 (2018). A defendant "may not claim entitlement to an instruction that has no basis in the evidence presented during trial." *Commonwealth v. Hairston*, 624 Pa. 143, 84 A.3d 657, 668 (2014) (citation omitted).

*Commonwealth v. Soto*, 202 A.3d 80, 98–99 (Pa.Super. 2018). "A charge will be found adequate unless the issues are not made clear, the jury was misled by the instructions, or there was an omission from the charge amounting to a fundamental error." *Commonwealth v. Chambers*, 602 Pa. 224, 980 A.2d 35, 50 (2009).

Specifically, Appellant claims that he was entitled to a "corrupt source" jury instruction. We are guided by the following principles:

> [A "corrupt and polluted source"] instruction is required when an accomplice's testimony implicates the defendant; the instruction informs the jury "that the accomplice is a corrupt and polluted source whose testimony should be viewed with great caution." *Commonwealth v. Smith*, 609 Pa. 605, 17 A.3d 873, 906 (2011) (quoting *Commonwealth v. Chmiel*, 536 Pa. 244, 639 A.2d 9, 13 (1994)). This instruction is necessary if the trial evidence is sufficient to present an inference that a Commonwealth witness was an accomplice. *Smith*, 17 A.3d at 906.

*Commonwealth v. Wholaver*, 644 Pa. 386, 434–35, 177 A.3d 136, 165 (2018).

The Crimes Code provides the following definition of "accomplice":

> **(c) Accomplice defined.—**A person is an accomplice of another person in the commission of an offense if:
>
>> (1) with the intent of promoting or facilitating the commission of the offense, he:

(i) solicits such other person to commit it; or

(ii) aids or agrees or attempts to aid such other person in planning or committing it; or

(2) his conduct is expressly declared by law to establish his complicity.

18 Pa.C.S.A. § 306(c).

However, "a person is not an accomplice in an offense committed by another person if the offense is so defined that his conduct is inevitably incident to its commission." 18 Pa.C.S.A. § 306(f)(2). This Court has held that the conduct of a buyer who purchases a small quantity of drugs "is 'inevitably incident' to the delivery of drugs and [t]his conduct cannot be considered that of an accomplice." *Commonwealth v. Fisher*, 627 A.2d 732, 733 (Pa.Super. 1993).

Appellant does not develop any argument on appeal to explain why the corrupt source instruction was necessary in that the evidence would allow the jury to infer that any of the prosecution's witnesses (Miller, Foster, Wagner, Alterio, and Rearick) were his accomplices. Instead, Appellant argues that the prosecution witnesses were all biased as they had not yet been charged in connection with their June 13, 2018 arrests. Appellant argues that the trial court should have specifically charged the jury to carefully scrutinize and consider the testimony of these five witnesses with caution.

In reviewing the record, we note that evidence presented by both the prosecution and defense fully apprised the jury that Miller, Foster, Wagner, Alterio, and Rearick had interests in testifying for the Commonwealth.

Detective Paul admitted on direct examination that none of these five witnesses had been formally charged in connection with their June 13, 2018 arrests. Detective Paul testified that after Appellant's trial, the district attorney's office would "review every case individually and determine in the end if and what charges they get charged with." N.T. at 106. Defense counsel also aptly highlighted the bias of the prosecution witnesses and their motive to testify for the Commonwealth.

Moreover, the trial court provided the jury with a thorough instruction on witness credibility. The trial court emphasized that the jury members were the "sole judges of the credibility of the witnesses and their testimony" and indicated the jury "must judge the truthfulness and accuracy of each witness's testimony to decide whether or not to believe all or part or none of that testimony." N.T. at 353. In providing a list of factors for the jury to consider when deciding whether to believe a witness's testimony, the trial court specifically instructed the jury to assess whether the witness had "any interest in the outcome of the case, bias, prejudice, or other motive that might [a]ffect his or her testimony." N.T. at 353-54.

Considering the trial court's instruction on credibility and the fact that the jury was made aware that the five prosecution witnesses had an interest in testifying for the Commonwealth, we find the trial court's instructions "adequately, accurately and clearly present[ed] the law to the jury, and [were] sufficient to guide the jury in its deliberations." **Soto**, **supra**. Accordingly, we conclude that Appellant is not entitled to relief.

For the foregoing reasons, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/21/2020